LEHAN, Acting Chief Judge.
Plaintiffs, the owners of units in one condominium within a project containing eleven condominiums, appeal from a partial summary judgment entered in favor of defendant condominium association. The partial summary judgment was entered as to count IV of the complaint which asked for a declaration of rights as to the manner of assessments by the association for common expenses. In count IV plaintiffs contended that assessments for the expenses of repairs to plaintiffs’ condominium units should be apportioned among all unit owners of all condominiums within the project, rather than being paid only by the owners of units in plaintiffs’ condominium. The trial court disagreed and ruled that the assessments should be against only the units in plaintiffs’ condominium. Notwithstanding the persuasive arguments made on behalf of plaintiffs, we affirm.
Article IX.D of the declaration for plaintiffs’ condominium provides:
Each Apartment owner shall be liable for a proportionate share of the common expenses of the Association, such share being the same as the undivided share in the common elements, which is appurtenant to his Apartment.
Article VI of the declaration provides:
The Condominium ... may be one of a series of several Condominium Apartment Buildings, which may be constructed under a common plan.... Each building ... shall constitute a separate Condominium Property, but all of the Condominiums in this development shall be operated and governed by the same Association....
As explained below, we construe the term in article IX.D, “common expenses of the Association” to mean the common expenses of, and payable to the association for, the particular condominium in which the unit paying the expenses is located.
Since, as provided in article VI, the association is to serve as the condominium association for alb eleven condominiums within the common plan and since the association is responsible for repairs to the common elements in the condominium, plaintiffs urge that article IX.D of the declaration should be construed so that the term “common expenses of the Association” for which each unit owner is liable means that a unit owner is liable for a share of the common expenses of all condominiums within the common plan of the condominium project. That construction was followed by the parties in this case for approximately twelve years from the inception of the condominiums until July 1,1986. At that time, as called for by the Florida Department of Business Regulation, Division of Land Sales and Condominiums, the association began assessing each unit owner only for the common expenses of the *1111 particular condominium in which that unit is located.
We agree with the plaintiffs that the course of conduct of parties to a contract may be used to resolve an ambiguity in the contract. They contend that the course of conduct of the parties to the condominium declaration involved in this case requires the foregoing construction of the declaration which they urge. For the reasons explained below we do not agree.
We do not conclude that article IX.D of the declaration should be found to be ambiguous. The wording of that article following the comma clearly states that each unit owner is liable for a share of the common expenses equal to his share in the common elements appurtenant to his unit. Common elements are defined by article V.D. as being “portions of the Condominium property not included in the apartments,” and article V.G. defines “condominium property” only as land and improvements, etc. “in the Condominium....” It is therefore apparent that each apartment, i.e., unit, owner owns a share of common elements only in the condominium in which his unit is located and does not own a share of the common elements in any of the other ten condominiums within the project. Thus, each unit owner’s share of the common expenses is equal to his share of the common elements in the condominium in which his unit is located.
As we have said, plaintiffs argue that Article IX.D means that the share of the common expenses for which each unit owner is liable should be a share of the total common expenses of the entire condominium project. Using their construction of that article, each unit owner would pay a share of the total common expenses of the entire project which is equal to his share of the common elements in his condominium. But then, since the total of the shares of unit owners of one condominium in the common elements of that condominium will equal 100 percent, the expenses paid by each of the eleven condominiums would equal 100 percent of the total expenses of the project. To illustrate using a simplified example to show the apparent result of plaintiffs’ construction, if there were ten units in each of the eleven condominiums, then each unit owner would pay for a one-tenth share of the total common expenses for the entire project, which would result in 110 one-tenth shares being paid or, in other words, 1100 percent of the total common expenses being paid. This result would obviously not be rational.
On the other hand, by construing article IX.D, as did the trial court, to require an owner to pay only a share of the common expenses of the condominium in which his unit is located and not a share of the expenses of the entire project, the proportionate shares referred to in article IX.D are rational because then the shares paid by the unit owners in each condominium which equal 100 percent will be the only shares paying the expenses referred to in that article.
Such an interpretation is also consistent with section 718.115(2), Florida Statutes (1985), which provides that in a residential condominium such as the one in this case “unit owners’ shares of common expenses shall be in the same proportions as their ownership interest in the common elements.” Thus, section 718.115(2) expresses an intent which is consistent with that which we have explained is expressed in article IX.D of the declaration.
Different portions of the wording of a contract should be construed, if rationally possible, to be consistent with each other. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979). The words of Article IX.D which precede the comma in that article must, in order to be consistent with our foregoing construction of the words which follow the comma, be construed in the manner we have stated earlier in this opinion. That is, those words preceding the comma must be construed to refer to the common expenses payable to the association for the particular condominium in which the unit paying the expenses is located.
For the reasons we have given, the construction of the declaration urged by plain *1112 tiffs would not appear to yield a rational result. In addition, that one association is to operate the entire project does not necessarily mean that each unit owner is to be responsible for a share of the total common expenses of the project. Section 718.-111(12) (a) (11), Florida Statutes (1985), provides for a condominium association to maintain “separate accounting records for each condominium which the association operates_” It is possible for one association to operate an entire multiple condominium project as contemplated by article VI and be consistent with section 718.-111(12) (a) (11) by keeping separate the financial matters of each individual condominium within the project.
It is true, as plaintiffs also argue, that an association for a condominium project may consolidate the financial matters, including budgets and assessments, of all condominiums within the project. But section 718.111(6) provides for that only if the project is “a phase project initially created pursuant to former s. 711.64_” Plaintiffs contend that the condominium project in this case is a phase project. But, as they concede, their condominium was not created pursuant to section 711.64, Florida Statutes (Supp.1974); the declaration for the condominium was recorded in March 1974, prior to the effective date of section 711.64. Furthermore, section 718.-111(6) provides for such consolidation of financial matters “if provision is made for such consolidated operation in the applicable declarations of each such condominium as initially recorded....” The declaration for plaintiffs’ condominium makes no provision for consolidating the financial operations of the eleven individual condominiums. Except for providing that one association will operate the entire project, the declaration provides that each of the eleven condominiums is a separate condominium and that, as we have explained above, each unit owner is to be assessed for common expenses in a share equal only to his share of the common elements in his condominium.
An additional argument of plaintiffs is that the association is barred by the doctrine of equitable estoppel from instituting the change in the assessment procedure. The effect of the change is that unit owners within plaintiffs’ condominium, who in the past had paid assessments for their proportionate shares of the expense of repairs to the common elements in other condominiums in the project, will now be required to pay all the expenses for repairs to the common elements in their own condominium without unit owners in the other condominiums contributing a proportionate share. Citing Kuge v. State Department of Administration, 449 So.2d 389 (Fla. 3d DCA 1984), plaintiffs contend that all the requisites of equitable estoppel are present. However, to apply the doctrine of equitable estoppel in this case and to require that the association continue to make assessments using the prior method would require that the association operate contrary to the declaration and the intent reflected by section 718.115(2). The doctrine of equitable estop-pel should not be employed to reach a result which is unlawful or contrary to public policy. See Corporation de Gestion Ste-Foy, Inc. v. Florida Power & Light Co., 385 So.2d 124, 126 (Fla. 3d DCA 1980). While we recognize that the method of assessment urged by plaintiffs did not appear to be against expressed public policy at the time this condominium was created, nonetheless we do not conclude under the circumstances of this case that the doctrine of equitable estoppel should be applied so as to require a result which is contrary to the declaration and is now contrary to the law. We do not conclude that for each unit owner to pay for the expenses for condominiums in which his unit is not located would necessarily be equitable if, as is no doubt the case, the expenses of some condominiums are greater than those of others. Also, Kuge may be distinguished from this case on the basis that, as we note below, plaintiffs have another method of correcting the imbalance among payments by the various unit owners caused by the prior assessment method, whereas, as the court in Kuge noted, the plaintiff in that case would have been without a remedy if the doctrine of equitable estoppel had not been applied.
Plaintiffs contend that allowing the association to change the method of assessment *1113 will result in an injustice to them as unit owners in a condominium who have in the past paid a share of the expenses for repairs to other condominiums in the project and who will not receive reciprocal benefits under the new assessment method. But we do not conclude that the appropriate remedy under those circumstances would be to prevent the association from making a change in the assessment method which would bring the method into conformity with the provisions of the declaration and the statutes. Plaintiffs have other remedies available to recover any overpayments by them, as the trial court suggested in the final judgment, although hopefully the matter may be amicably resolved without another lawsuit.
Plaintiffs’ final contention is that the association, during the course of this litigation, entered into certain stipulations with plaintiffs in which the association agreed that the prior method of assessment would be used. We must disagree with that contention. The association stipulated that if certain repairs to plaintiffs’ condominium building were found to be necessary, the association would have the duty to make those repairs “at its sole expense.” But we do not conclude that the stipulation necessarily means that the association agreed that the assessment for those repairs would be apportioned among all unit owners in the condominium project. Although the association agreed to make the repairs at its sole expense, the stipulation did not say how the association would get the money to make the repairs. The way a condominium association acquires funds is by assessing unit owners, and, as we have previously concluded, the correct method for this association to use in making those assessments is contrary to plaintiffs’ position.
Affirmed.
FRANK and THREADGILL, JJ., concur.