634 So.2d 264 (1994)
COUNCIL BROTHERS, INC., a Florida corporation, Appellant,
v.
CITY OF TALLAHASSEE, Appellee.
No. 92-2228.
District Court of Appeal of Florida, First District.
March 30, 1994.
Michael F. Coppins of Cooper & Coppins, P.A., Tallahassee, for appellant.
Laura Beth Faragasso of Henry & Buchanan, P.A., Tallahassee, for appellee.
JOANOS, Judge.
Council Brothers, Inc. appeals a final judgment holding the company liable to the City of Tallahassee (City) for systems charges in the amount of $49,500. The sole issue on appeal is whether the trial court erred in failing to estop the City from the imposition and collection of systems charges on appellant as subcontractor of the construction of the Florida State University Biomedical Research Facility. We reverse.
This cause arose in the context of a complaint filed by Council Brothers for declaratory judgment as to its liability for systems charges. The complaint alleged that in preparation of its bid on the project, Council Brothers relied on information provided by the City's agent that systems charges were not due on the project. After Council Brothers submitted its successful bid for the project, the City's agent sought a legal opinion from the City attorney, who advised that the project was not exempt from systems charges. The complaint further alleged that the City Inspection Department demanded payment of $49,500 or a release from the *265 City for payment of the fee. Attached to the complaint was a pre-trial memorandum of law, in which Council Brothers sought application of the doctrine of estoppel to estop the City from claiming amounts due for systems charges.
Evidence adduced at the non-jury trial established that it is standard practice for contractors to contact Mr. Posey, the City's plumbing inspector, when preparing to bid on a construction project located within the City of Tallahassee. The contractors use the information obtained from Mr. Posey as to tap fees and systems charges in their bid calculations for particular projects. Although a table of systems charges[1] is set forth in Article V, Section 25-78 of the Tallahassee Code, it appears the amounts specified in the table indicate base charges which then must be used in conjunction with tap charges and meter charges. The final systems charge for a given project will be determined, in part, by the size of the meter or the size of the tap which connects the new facility to city water lines. Consequently, the table of charges set forth at Section 25-78, of the Tallahassee Code constitutes merely a beginning point for determination of systems charges. It is undisputed that the City has authorized Mr. Posey to provide information to contractors concerning systems charges and tap fees.
The contract specifications for the Biomedical Research Facility required the construction company to determine and to pay all fees. In this instance, Mr. Posey provided Council Brothers with the specific amounts of the water tap and fire tap fees. Mr. Posey also advised there would be no sewer tap fee on this particular project, because there was an existing on-site sewer, and further advised there would be no systems charges. Mr. Posey explained that systems charges would not apply, because the project was a teaching facility with classrooms.
The record indicates the existence of some confusion both in the construction industry generally, and in various departments of the City, as to the applicability of systems charges to projects having an educational purpose.[2] The confusion in this instance arose, in part, because systems charges were not imposed initially on the Bob Leach Center constructed in the area adjacent to the Biomedical Research Facility. The record reflects that other bidders for construction of the Biomedical Research Facility also sought information from Mr. Posey as to the systems charges applicable to the project. Based upon Mr. Posey's representations, unsuccessful bidders on the project did not include an amount for systems charges in calculating their bids.
Several months after the company's bid had been accepted, a Council Brothers employee went to the City to obtain the necessary permits. It was at that point that Council Brothers learned the project was not exempt from systems charges. Council Brothers posted a bond for the systems charges, and went forward with completion of the work specified in the company's contract with the City.
The trial court found as a matter of fact and law that Council Brothers relied on the representations of the City's authorized agent, and changed its position to its detriment in the calculation of its bid on the construction project. However, the trial court further found the company's reliance *266 was not reasonable and in good faith, because the information was readily available elsewhere. The court's opinion seemed to be influenced somewhat by the fact that the company did not request a written statement from Mr. Posey. Based upon the foregoing findings, the trial court ruled that, as a matter of law, equitable estoppel would not apply to shield Council Brothers from liability for systems charges which were not included in the company's successful bid for the Biomedical Research Facility project.
The elements which must be present for application of estoppel are: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981). See also Dolphin Outdoor Advertising v. Department of Transportation, 582 So.2d 709, 710 (Fla. 1st DCA 1991); Harris v. State, Department of Administration, Div. of Employee's lns., 577 So.2d 1363, 1366 (Fla. 1st DCA 1991); Warren v. Department of Administration' 554 So.2d 568 (Fla. 5th DCA 1990). As a general rule, estoppel will not apply to mistaken statements of the law, see Dept. of Revenue v. Anderson, 403 So.2d at 400, but may be applied to erroneous representations of fact. Dolphin Outdoor Advertising v. Dept. of Transportation, 582 So.2d at 711; Harris v. Dept. of Admin., 577 So.2d at 1366; Warren v. Dept. of Admin., 554 So.2d at 571; City of Coral Springs v. Broward County, 387 So.2d 389, 390 (Fla. 4th DCA 1980).
Equitable estoppel will apply against a governmental entity "only in rare instances and under exceptional circumstances." North American Co. v. Green, 120 So.2d 603, 610 (Fla. 1959); Dept. of Revenue v. Anderson, 403 So.2d at 400. In proper circumstances, the doctrine "may be invoked against a municipality as if it were an individual." Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15 (Fla. 1976). The reasonable expectation of every citizen "that he will be dealt with fairly by his government," can form the basis for application of equitable estoppel against a governmental entity. Id. at 18.
One seeking to invoke the doctrine of estoppel against the government first must establish the usual elements of estoppel, and then must demonstrate the existence of affirmative conduct by the government which goes beyond mere negligence, must show that the governmental conduct will cause serious injustice, and must show that the application of estoppel will not unduly harm the public interest. Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992). In Cheshire, federal officials made representations to one holding a lien against property to be transferred from the federal government to Alachua County, that the county would pay the valid lien. In reliance upon those representations, the lienholder forbore to file a foreclosure suit within the applicable limitations period. This court refused Alachua County's effort to avoid the effect of the federal officials' misrepresentations, holding that the "federal employees' ignorance of the statute of limitations does not bar application of equitable estoppel." 603 So.2d at 1337.
Similarly, in Salz v. Department of Administration, Division of Retirement, 432 So.2d 1376 (Fla. 3d DCA 1983), the Teachers' Retirement System informed a teacher in writing that she could purchase eight years of credit for her out-of-state teaching time to apply toward her Florida retirement. The teacher made plans for her retirement based upon that representation. Subsequently, the Division advised that the representation had been clerical error or oversight, because the teacher's prior service had not been computed in accordance with section 238.06(4), Florida Statutes, which authorized credit for teaching service outside the state in any public free school. Although the Teachers' Retirement System received information that the teacher had taught at a non-public school, it still allowed her to purchase credit for eight years. The Division argued that the official who initially approved the teacher's purchase of credit was not authorized to approve the purchase. The court rejected the argument, noting that the Division also approved the purchase. Since the teacher demonstrated special circumstances, a positive *267 act by the state agency, and her own detrimental reliance upon the agency's act, she was deemed entitled to the benefit of estoppel.
In another retirement case, Kuge v. Department of Administration, Division of Retirement, 449 So.2d 389 (Fla. 3d DCA 1984), a state employee relied upon the Division's representation concerning her creditable service for state retirement benefits before leaving state employment to work in the private sector. In January 1983, the Division advised that the employee would complete ten years of service at the end of March 1983. In April 1983, the Division rescinded its January memorandum, and advised it mistakenly allowed .67 years of creditable retirement service for educational leave, a credit which could not be taken unless the employee had ten years of creditable service, excluding the period of educational leave. The court ruled the representations concerning the employee's creditable state retirement service were representations of material fact which the employee relied upon to her detriment. In so holding, the court expressly rejected the Division's contention that the representations concerned matters of law rather than of fact, noting that, "[i]t is true that such representations were based on a misunderstanding of the law applicable to [the employee's] case, but this does not convert the factual representations into legal representations." 449 So.2d at 391-392. See also Tri-State Systems, Inc. v. Department of Transportation, 500 So.2d 212 (Fla. 1st DCA 1986), review denied, 506 So.2d 1041 (Fla. 1987); Fraga v. Department of Health and Rehabilitative Services, 464 So.2d 144 (Fla. 3d DCA 1984), review denied, 475 So.2d 694 (Fla. 1985).
The record in this case reflects that Mr. Posey consistently provided accurate information to inquiring contracting firms concerning systems charges and tap fees. The trial court found as fact that Mr. Posey made the erroneous statement regarding systems charges, and that Council Brothers relied upon that statement, to the company's detriment. The record further reflects that although Mr. Posey was authorized by the City to provide information as to fees and systems charges, he did not obtain clarification of the question of system charges to Board of Regents educational projects until June 1990, well after the March 20, 1990, bid date for the Biomedical Research Facility.
The record in this case demonstrates the existence of the necessary elements for application of the doctrine of estoppel. The record is clear that it is standard industry practice for firms to contact the City's plumbing inspector for the amount of fees and systems charges which should be included in bid calculations for construction projects in the City. In authorizing its agent to respond to contractors' inquiries, the City was obligated to insure the accuracy of the information furnished. In this instance, the City's agent advised that systems charges would not apply to the construction project at issue. As a direct result of that representation, Council Brothers submitted a bid which did not include the $49,500 systems charge. Since the contract required Council Brothers to pay all fees and charges, the company's reliance on Mr. Posey's representation caused it to incur a major financial loss. In our view, the affirmative misrepresentation in this case goes beyond mere negligence, and, if permitted to stand, would cause serious injustice. In making this determination, we reject the City's argument that application of estoppel would be contrary to public policy. To the contrary, we consider application of estoppel is necessary in this case to assure fair dealing by the City.
The case law dealing with application of estoppel against a governmental entity illustrates that the distinction to be drawn between a factual and a legal representation will depend upon the context of the particular case. See, e.g., Dolphin Outdoor Advertising v. DOT, 582 So.2d at 711-712 (J. Wentworth, specially concurring). Our decision in this case is not predicated upon such distinctions. Rather, we conclude that the unusual and exceptional circumstances of this case warrant application of equitable estoppel to preclude the City from requiring Council Brothers to pay systems charges on the Biomedical Research Facility. Since the City undertook to provide contractors with information as to tap fees and systems charges, it was *268 obligated to insure that its agent furnished accurate information.
Accordingly, we reverse the order holding that estoppel will not lie against the City, and remand for entry of an order estopping the City of Tallahassee from imposing systems charges upon appellant as subcontractor of the Florida State University Biomedical Research Facility.
ERVIN and WOLF, JJ., concur.
NOTES
[1] "Systems charges" are impact fees, which, when imposed, are used by the City to pay for the capital costs of water mains and water treatment plants.
[2] The confusion seems to stem, in part, from a mistaken construction of section 235.26, Florida Statutes, pertaining to a state-wide uniform building code for construction of public educational facilities. Section 235.26(1), relevant to the issue in this case, provides in part:

(1) Uniform Building Code.  All public educational and ancillary plants constructed by a board, except the Board of Regents, shall conform to the State Uniform Building Code for Public Educational Facilities Construction, and such plants are exempt from all other state, county, district, municipal, or local building codes, interpretations, building permits, and assessments of fees for building permits, ordinances, and impact fees or service availability fees. (Emphasis supplied.)
Mr. Posey's testimony indicated that prior to obtaining clarification from the City attorney, he considered that Board of Regents teaching facilities were exempt from systems charges, and he had received written opinions from university officials to that effect.